[Civ. No. 25004. Fourth Dist., Div. Two. Sept. 4, 1981.]

JAMES W. HODGE, SR., Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY
OF WISCONSIN, Respondents.

[Civ. No. 25029. Fourth Dist., Div. Two. Sept. 4, 1981.]

EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY
OF WISCONSIN, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
JAMES W. HODGE, SR., Respondents.

**COUNSEL**

Thompson, Talbott & Lemaster and Graham W. Talbott for Petitioner in No. 25004 and for Respondent in No. 25029.

Samuelsen, Whitehead, Ringwalt & Jenkins and Charles Ringwalt for Petitioner in No. 25029 and for Respondent in No. 25004.

Richard W. Younkin, William B. Donohoe and Dexter W. Young for Respondent Workers' Compensation Appeals Board.

## OPINION

**THE COURT.**\*—We issued writs of review in each of these matters to determine if the Workers' Compensation Appeals Board (hereafter Board) acted in excess of its powers. (Lab. Code, § 5952, subd. (a).) Each petitioner contests certain aspects of the Board's "Opinion and Order Denying Reconsideration" entered in the case of *Hodge v. Lockheed Aircraft*, WCAB No. 72 POM 26316. Because the issues are related, this court *sua sponte* ordered consolidation.

## THE FACTS

James Hodge (hereafter employee) sustained severe back injuries in January 1972 while employed at Lockheed Aircraft Service. He fell approximately three feet when a floorboard he was standing on collapsed. Lockheed was insured for workers' compensation liability by Employers Mutual Liability Insurance Company of Wisconsin (hereafter employer).[1]

The employee filed an application for workers' compensation benefits in August 1972. At that time, he was experiencing pain, but resisted surgery. He finally submitted to surgery (exploratory laminotomy and attempted posterolateral fusion) in January 1974, two years after the accident.

Upon release from the hospital, the employee was transported to his residence by Goodhew Ambulance Service. Upon arriving at home, the ambulance stretcher suddenly dropped approximately two and one-half feet, jarring the employee and causing him considerable pain. A civil action was instituted by the employee against Goodhew for negligence in transporting him. The employer intervened in the civil action against the third party tortfeasor under Labor Code section 3853.[2]

In July 1976, the workers' compensation judge found that as a result of the industrial injury the employee sustained total permanent disability, entitling him to $21,000 at $52.50 per week and thereafter a life

---

\*Before Gardner, P. J., Tamura, J., and McDaniel, J.

[1]We refer to the insurance carrier as "employer" in keeping with the statutory usage. (Lab. Code, § 3850, subd. (b).)

[2]Labor Code section 3853 provides that if either the employee or employer brings an action against a third party, the other party may join as a party plaintiff prior to trial.

pension of $48.46 per week. No issue of apportionment with respect to the subsequent injury was raised or resolved at that time.

Subsequently, a judgment in the civil action was entered in December 1978 in which the employee recovered $105,000 from the third party tortfeasor. The record of that action has not been incorporated as part of the record in these writ petitions. Only the formal judgment is included. It simply reflects a general verdict in the employee's favor against Goodhew in the amount of $105,000. It also states: "Pursuant to stipulation, the lien of the intervenor upon plaintiff's verdict is $12,069.00."

Within a week, the employer filed a petition for credit with the Board requesting that "this matter be set for hearing to determine the amount of credit allowable to Employers Mutual Liability Insurance Company of Wisconsin." On March 11, 1980, a workers' compensation judge ordered that a credit be allowed "in the amount of $105,000, less attorney's fees, costs, and liens against the liability for payments of compensation under the Findings and Award issued July 27, 1976."

The employee then filed a petition for reconsideration claiming that: (1) since more than five years had elapsed since the date of the injury the Board lacked jurisdiction to order a credit; (2) the allowance of the $12,069 lien in the civil action was a complete and final settlement of the employer's right for credit on the third party judgment; and (3) assuming some credit is due, the amount of that credit is a matter for the Board to determine, and the employer is entitled to a credit only to the extent its liability has been increased by the negligence of the third party tortfeasor. The employer filed an answer to this petition. The judge issued a "Report and Recommendation on the Petition for Reconsideration" urging denial of the petition.

On May 20, 1980, the Board issued its "Opinion and Order Granting Reconsideration and Decision After Reconsideration." The Board confirmed that the employer was entitled to a credit. However, with respect to computation of the credit, the Board found that the employer was "entitled to a credit against said judgment in its net amount as provided by Labor Code Sections 3861 and 3858, against benefits paid by reason of third party negligence, in an amount to be determined by the parties

or determined by a workers' compensation judge if the parties are unable to so adjust."[3]

The employer then filed a petition for reconsideration claiming that a credit must be allowed in the amount of the full net recovery against the third party tortfeasor in the civil action. The employee filed an answer to this petition.

On August 4, 1980, the Board issued its "Opinion and Order Denying Reconsideration." That opinion stated: "Petitioner contends that the Appeals Board erred in failing to allow the credit in a sum certain, as the extent of benefits payable as a result of the third party's negligence was determined by the relevant Superior Court judgement [*sic*]....

"In our Opinion, we noted that the credit applied to the increased benefits payable by defendant carrier as a result of the third party's negligence....

"By the judgment of the Superior Court, entered December 22, 1978, it was noted that pursuant to stipulation, the lien of the intervenor (petitioner, herein) was $12,069.00. By that judgment, such lien was allowed against applicant's recovery.

"Attached to defendant's Petition for Reconsideration as Exhibit 'A', is a copy of its counsel's letter to the workers' compensation judge dated June 11, 1979 and June 8, 1979. On page 3 of such letter, counsel noted as follows:

"'... [T]he lien asserted by Employers Mutual Liability Insurance Company of Wisconsin at the time of Judgment was $12,069.00, repre-

---

[3]The Board explained in its opinion: "Defendant carrier is entitled to a credit computed pursuant to Labor Code sections 3861 and 3858, which is to be applied to the increased benefits payable by it as a result of the third party's negligence. In his Report the workers' compensation judge pointed out that in making a determination relevant to a workers' compensation carrier's lien against a third party judgment it may be difficult to segregate the portion of payments made by a carrier as a result of the original injury from the increased benefits paid as a result of the later third party negligence. The same problem exists with reference to the determination of the workers' compensation carrier's credit. The record herein has not been developed on this point. We shall therefore provide for the benefits subject to credit in an amount to be adjusted by the parties or determined by a workers' compensation judge if the parties are unable to so adjust. It may be that all the benefits paid by the carrier are because of the third party's negligence, or that only a portion of such is."

senting moneys which actually had been paid before satisfaction of judgment attributable to the negligence of the third party. No part of the *stipulation represented moneys owing in the future after satisfaction of judgment.*' (Italics added.)

"Thus, all the Superior Court determined was the amount which *had* been paid by defendant carrier as a result of the third party negligence. There was no determination with reference to any future benefits payable by defendant."

Discussion

The employee and employer challenge the Board's actions in several respects. The employee asserts that: (1) the Board lacked jurisdiction to award any credit to the carrier under Labor Code sections 5803, 5804; (2) the employer's acceptance of the stipulated sum as a lien in the civil action was a complete and final settlement of any claim for credit; and (3) assuming there is no merit in the first two contentions, the employee nevertheless has been denied a full hearing on the credit issue.

The employer contends that the Board may not redetermine the amount of the credit the employer is entitled to following trial in superior court, and that the employer is entitled to credit in the amount of the full net third party recovery under Labor Code section 3861.

As we will explain herein, neither the employee nor employer's contentions are meritorious. The Board's order properly effectuates an equitable and proper procedure for the award of a credit in this case. Accordingly, the relief sought by both petitions is denied.

I.

The employee's threshold contention is that the Board lacked the jurisdiction to issue the order allowing any credit because more than five years had elapsed since the date of the employee's injury. Reliance is placed on Labor Code section 5804 which states in pertinent part: "No award of compensation shall be rescinded, altered, or amended after five years from the date of injury except upon a petition by a party in interest filed within such five years . . . ."

In opposition, the employer points to Labor Code section 3861 which provides that: "The appeals board is empowered to and shall allow, as a

credit to the employer to be applied against his liability for compensation, such amount of any recovery by the employee for his injury, either by settlement or after judgment, as has not theretofore been applied to payment of expenses or attorney's fees, pursuant to the provisions of Sections 3856, 3858, and 3860 of this code, or has not been applied to reimburse the employer." The employer places reliance upon the words "shall allow as a credit" as evidence of the Board's mandatory duty to allow a credit despite the lapse of more than five years.

The employee and employer suggest that sections 5804 and 3861 pose some sort of irreconcilable conflict. However, allowing the employer a credit for sums paid which are properly attributable to a third party tortfeasor's negligence does not alter the award of compensation to the injured employee within the meaning of section 5804.

The employee's position that the five-year limitation serves as a bar here is not supported by cases decided under that statute. The five-year limitation has been faithfully applied to bar applications filed beyond five years from the date of the industrial injury seeking to increase the compensation awarded (*Al Gene Sportswear* v. *Ind. Acc. Com.* (1961) 196 Cal.App.2d 709 [16 Cal.Rptr. 760]) or addressing injuries known, but not raised, within the time period. (*McKeehan* v. *Ind. Acc. Com.* (1949) 14 Cal.Comp. Cases 248). In these instances, the statute operates to bar stale claims going to the merits of the basic decision of entitlement and extent of benefits.

Nevertheless, it is clear that a significant number of exceptions have developed in which the jurisdictional limit of section 5804 has not barred proceedings beyond five years from the date of injury. The most significant exception perhaps is that the Board possesses inherent power to enforce a previous order. (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation, § 19.04[5].) Similarly, orders commuting an award to a lump sum payment have been determined to be outside the five-year limit. (*Norwich Union Indem. Co.* v. *Indus. Acc. Com.* (1934) 140 Cal.App. 36 [34 P.2d 1062]; 1 Herlick, Cal. Workers' Compensation Law Handbook (2d ed.) § 14.7.) An order setting an award of attorney's fees outside the five-year period has also been permitted where the attorney's services were not performed until after five years from the date of injury. (*Garcia* v. *Industrial Acc. Com.* (1958) 162 Cal.App.2d 761 [328 P.2d 561].)

The common denominator in all of these situations is that the Board's order did not affect the merits of the basic decision determining the injured employee's right to benefits or the amount of those benefits. Rather, the Board's order involved issues collateral to the amount of the award (i.e., commutation merely alters the *form* of the award). Stated differently, in none of these situations was the underlying award made to the employee "rescinded, altered, or amended" within the meaning of section 5804.

Reasoning from this, we now consider whether the award of a credit is similarly collateral to the underlying award of benefits. The Board's order of May 20, 1980, confirmed a credit "against said judgment in its net amount ... against benefits paid by reason of third party negligence...." Thus, the amount of the credit will be no more than what the employer has already paid to the employee by way of benefits caused by the third party's negligence. Awarding a credit will not rescind the underlying award for the industrial injury. Rather, it will simply allow the employer to recover those benefits already paid out properly attributable to the third party's negligence.

Practical considerations also militate against imposing the five-year limitation here. In the instant case, the civil judgment finding the third party liable was not entered until more than five years after the date of the industrial injury. Therefore, any request for a credit by the employer prior to a determination that the employee was injured by the third party's negligence would have been premature at best.

A very similar problem involving the application of jurisdiction statutes was presented in *Subsequent Injuries Fund* v. *Workmen's Comp. App. Bd.* (1970) 2 Cal.3d 56 [84 Cal.Rptr. 140, 465 P.2d 28]. An employee sustained an industrial injury to her leg. She was awarded temporary benefits and jurisdiction to determine the permanent disability was reserved. The employee suffered from a prior leg injury due to tuberculosis. The award of permanent disability was made more than five years after the date of the injury,[4] and it was not until that point the employee was found to be an eligible claimant for subsequent injuries fund benefits.

---

[4]The relevant jurisdictional statute barred claims against the fund more than five years after the date of the injury, and therefore the employee was placed in a precarious situation.

Our Supreme Court found that "where, prior to the expiration of five years from the date of the injury, an applicant does not know and could not reasonably be deemed to know that there will be substantial likelihood he will become entitled to subsequent injuries benefits, his application against the Fund will not be barred—even if he has applied for normal benefits against his employer—if he files a proceeding against the Fund within a reasonable time after he learns from the board's findings on the issue of permanent disability that the Fund has probable liability." (*Id.*, at p. 65.)

The employer faced the same dilemma in this case. Although the third party claim was filed prior to the workers' compensation judge's award there was no judgment in the civil matter until more than five years had passed.[5] Prior to some determination of the third party's responsibility, the employer was not entitled to seek any credit. It is axiomatic that statutes of limitation should not be interpreted in a fashion resulting in the right to be lost before it accrues. (*Subsequent Injuries Fund* v. *Workmen's Comp. App. Bd.*, *supra*, 2 Cal.3d 56; *Garcia* v. *Ind. Acc. Comm.*, *supra*, 162 Cal.App.2d 761.) Once the judgment was entered, the employer promptly petitioned for credit approximately a week later.

The employee contends that the employer was obligated to raise the possibility of a credit in the original compensation proceeding in 1976 and reserve the Board's jurisdiction over that issue. As a matter of practice and out of an excess of caution, that may be advisable. However, the employee cites no authority supporting the notion that a waiver of the right to claim a credit results in the absence of such a reservation.

To the contrary, merely failing to raise the credit issue in the original proceeding does not waive the employer's right to subsequently claim it. (*Pacific G. & E. Co.* v. *Ind. Acc. Com.* (*Johnson*) (1935) 8 Cal.App.2d 499, 503-504 [47 P.2d 783].) There is no evidence of any expressed or implied waiver of the employer's right to a credit. (*Pacific G. & E. Co.*, *supra*, at p. 503.) Therefore, the Board has jurisdiction to award a credit, and there was no waiver of the employer's right to seek that credit.

---

[5]Our analysis assumes that reference to "five years from the date of the injury" in Labor Code section 5804 refers to the initial industrial injury, not the subsequent injury.

## II.

■ The employee's next point is that the employer's stipulated lien in the civil action was a settlement of all of the employer's claims, and therefore the credit which may be awarded by the Board should be limited to $12,069. We disagree.

The problem with this claim is that the right to a credit in a Board proceeding and the right to a lien in the third party action are separate and distinct matters. (*Herr* v. *Workers' Comp. Appeals Bd.* (1979) 98 Cal.App.3d 321, 327 [159 Cal.Rptr. 435]; *Pacific G. & E. Co.*, *supra*, 8 Cal.App.2d 499.)

This problem falls fairly close to the issue presented in *Herr, supra.* There a county employee suffered an industrial accident. He also sued a third party civilly for damages as a result of the accident. The employer commenced payment of disability benefits, and filed a lien in *Herr*'s civil action. The civil action was settled. The employer participated in the settlement and agreed to receive approximately one-third of the amount of its lien ($10,200) as payment in full satisfaction of the lien. The judgment made no mention of the employer's credit rights. The employer then proceeded to claim a credit before the Board under Labor Code section 3861, however the workers' compensation judge denied the employer any credit on the basis of the lien settlement. Upon reconsideration, the Board determined that the employer was entitled to a credit. The Court of Appeal affirmed the Board's decision.

*Herr* held that the employer's credit rights were not waived by the acceptance of $10,200 as "payment in full" on the lien. "The waiver, failure to assert, or settlement of a lien claim in a civil action is not necessarily a settlement or waiver of the credit right. Under the general rule, to deny County [employer] credit there must have been an express waiver or settlement thereof. (*Sanstad* [v. *Industrial Acc. Com.* (1959)] 171 Cal.App.2d 32 [339 P.2d 943]; *Pacific G. & E. Co.*, *supra*, 8 Cal.App.2d at pp. 503-504; 2 Hanna, *op. cit. supra*, § 24.05[5][a]; 24.04[5][e]; Cal. Workmen's Compensation Practice (Cont. Ed. Bar 1943) § 18.32, p. 669.)" (98 Cal.App.3d at p. 328.)

The employee here contends that *Herr* is distinguishable since in *Herr* no disability award had been made prior to settlement of the civil action while here the employee's disability had already been determined prior to resolution of the civil action. That is a distinction without a dif-

ference in our view. A careful reading of *Herr* indicates that it is the fundamental distinction between credits and liens that is critical, and not whether disability benefits were determined before or after the civil action was resolved. (*Id.*, at pp. 327-328.)

Moreover, the employee's characterization of the intervener-employer's lien as a "complete and final settlement" is wholly unsupported by the record. Nowhere on the face of the judgment are the words "complete and final settlement" used to refer to the lien. It is simply stated that "the lien of the intervenor on plaintiff's verdict is $12,069.00."

The employee's contention that the lien must be viewed as a "final and complete settlement" simply because the employer intervened in the third party action is not well taken. The mere fact of intervening, rather than posing as a nonintervening lien claimant, does not import that the stipulated lien was any more or less a final and complete agreement on the issue of credit. As we have pointed out, the lien and credit are viewed as two distinct matters. Simply stated, the employer's acceptance of this stipulated lien in no way limits the employer's right to obtain a credit here.[6]

### III.

■ We now reach the crux of this matter. The question is whether the Board may determine to what extent the employee's disability was exacerbated by the third party's subsequent negligence, and award a credit to the employer corresponding to the third party's responsibility for exacerbating the disability under the applicable subrogation provisions of the Labor Code (§§ 3856, 3858, 3861). We hold that the Board has that power when the parties cannot otherwise settle the matter.

Both the employee and employer contest this aspect of the Board's decision. The employee claims that the Board's decision denies him due process. That contention lacks merit. The employee mistakenly refers to the Board's initial order granting the employer a credit in the net amount of the civil judgment to make his point. However, the Board re-

---

[6]The employee's contention that "the carrier failed to provide any evidence at the time of trial that it had been damaged in any amount" is outside of the record in these writs. All we have to work with is the face of the judgment, wherein the stipulated lien sum is neither deemed "final and complete," nor does it expressly waive the employer's right to a credit.

viewed its order with respect to the computation of the credit upon *employee's* "Petition for Reconsideration." Thereupon, the Board ordered that the employer was "entitled to credit against said judgment in its net amount ... against benefits paid by reason of the third party's negligence." It is this order under review here.

Nothing about that order denies the employee due process. The order instructed that the parties should attempt to resolve the matter amongst themselves first, however in the absence of any agreement then the Board would decide the matter. There is no evidence in the record the parties have ever attempted to settle the matter. Absent any agreement, however, there is no merit in the claim that having the Board resolve the matter constitutes a deprivation of due process.

Attacking from the other side, the employer contends that it is entitled to credit in the full net amount of the third party judgment and that the Board lacks the power to restrict the amount of the credit to that portion of the employee's disability exacerbated by the third party's negligence.

As authority, two Labor Code statutes are cited. The employer refers us to section 3861, which states: "The appeals board is empowered to and shall allow, as a credit to the employer to be applied against his liability for compensation, such amount of any recovery by the employee for his injury, either by settlement or after judgment, as has not theretofore been applied to the payment of expenses or attorneys' fees, pursuant to the provisions of Sections 3856, 3858 and 3860 of this code, or has not been applied to reimburse the employer."

Labor Code section 3858 provides: "After payment of litigation expenses and attorneys' fees fixed by the court pursuant to Section 3856 and payment of the employer's lien, the employer shall be relieved from the obligation to pay further compensation to or on behalf of the employee under this division up to the entire amount of the balance of the judgment, if satisfied, without any deduction. No satisfaction of such judgment in whole or in part, shall be valid without giving the employer notice and a reasonable opportunity to perfect and satisfy his lien."

Subrogation provisions are particularly subject to misinterpretation when they are not read in light of case law governing their application.[7]

---

[7]Our Supreme Court explained in *Roe v. Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 884 [117 Cal.Rptr. 683, 528 P.2d 771], that "Literally sections 3852, 3854,

Section 3861 is a procedural statute, which designates the Board as a forum for adjudicating an employer's untried claim for credit. It has no substantive force. (*Roe* v. *Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 884, 890 [117 Cal.Rptr. 683, 528 P.2d 771].)

Conversely, *Roe* recognized that section 3858 is "more substantive than procedural." But the Supreme Court quickly noted that, "It is qualified by Civil Code section 3517, which provides that 'No one can take advantage of his own wrong.' (*Witt* v. *Jackson, supra,* 57 Cal.2d 57, at p. 72 [17 Cal.Rtpr. 369, 366 P.2d 641].)" (*Ibid.*)

Further understanding of these statutory provisions, as interpreted by case law, can be gleaned from the Supreme Court's recent opinion in *Associated Construction & Engineering Co.* v. *Worker's Comp. Appeals Bd.* (*Cole*) (1978) 22 Cal.3d 829 [150 Cal.Rptr. 888, 587 P.2d 684]. *Cole* modified the rule in *Witt* v. *Jackson, supra,* and *Roe* v. *Workmen's Comp. Appeals Bd., supra,* that prevented a negligent employer from obtaining a credit toward future benefits when an injured employee recovers in a third party action. *Cole* applied concepts of comparative negligence (*Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]) and held that "the concurrently negligent employer should receive either credit or reimbursement for the amount by which his compensation liability exceeds his proportional share of the injured employee's recovery." (*Id.,* at p. 842; citations omitted.)

Both the employer and Board agree that *Cole's* reasoning is applicable by analogy to this situation, but disagree as to why it is analogous.

*Cole* distinguished between two situations. First, when the issue of the employer's concurrent negligence is raised in a judicial setting, the trier of fact should assess the employer's degree of fault under *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899]. "The court should then deduct the employer's percentage share of the employee's total recovery from the

3856 and 3860, subdivision (b), permit the employer's unqualified recovery of compensation payments from the negligent third party; yet substantive law rejects his claim if he has been concurrently negligent." (12 Cal.3d at p. 890.) While obviously the statement regarding substantive law has been changed by the advent of comparative negligence and the Supreme Court's holding in *Associated Construction & Engineering Co.* v. *Worker's Comp. Appeals Bd.* (*Cole*) (1978) 22 Cal.3d 829 [150 Cal.Rptr. 888, 587 P.2d 684], the point remains that these statutes cannot be read in a vacuum.

third party's liability—up to the amount of the workers' compensation benefits assessed against the employer. Correspondingly, the employer should be denied any claim of reimbursement—or any lien under section 3856, subdivision (b)—to the extent that his contribution would then fall short of his percentage share of responsibility for the employee's total recovery." (22 Cal.3d at p. 842; fn. omitted.)

When the employer's concurrent negligence arises in the context of a credit claim without resolution of comparative fault issues in a judicial forum, "[t]he board must determine (1) the degree of fault of the employer, and (2) the total damages to which the employee is entitled. The board must then deny the employer credit until the ratio of his contribution to the employee's damages corresponds to his proportional share of fault. Once the employer's workers' compensation contribution reaches this level, he should be granted a credit for the full amount available under section 3861. Only when such level of contribution has been reached, however, will grant of the statutory credit adequately accommodate the principle that a negligent employer should not profit from his own wrong." (22 Cal.3d at p. 843, fn. omitted.)

The teaching of *Cole* is twofold. First, the employer's claim to a credit in the full net amount of the third party's settlement with a third party tortfeasor was rejected to the extent his degree of fault exceeded his proportional share of the injured employee's recovery. (*Id.,* at p. 843, fn. 10.) Second, apportionment of damages and fault is within the Board's power when those issues are raised incident to a claim for credit. Although respective fault is not at issue in this case, we believe that by analogy and equity the employer's right to obtain a credit should extend only to the benefits paid as a result of the third party's exacerbation of the initial injury.

In the case at bench, the employee's initial injury was sustained during his employment without any concurrent third party negligence. The ambulance service's liability extends only to its responsibility for exacerbating the initial injury. The fact that a subsequent accident exacerbated the existing injury can in no way diminish the employer's obligation to pay disability benefits stemming from the first accident. The credit should extend only to that portion of future compensation benefits representing the third party's responsibility for exacerbating the employee's condition, since only that portion of the future benefits poses a potential for double recovery.

While the employer contends that apportionment of the disability was made in the third party action, such is not the case. Looking at the face of the civil judgment, it offers no indication that the apportionment of disability was decided by the jury. The employer has not incorporated the record of the third party action to support that claim. Simply stated, there is no actual determination shown on this record what portion of the employee's disability was caused by the first injury and what portion was caused by the subsequent jarring on the stretcher.[8] When, as in *Cole*, the factual issue underlying the computation of a credit has been left unanswered in the judicial forum, the responsibility belongs to the Board.

The employer maintains that determination of this matter by the Board is inconsistent with the constitutional provision to accomplish "substantial justice in all cases expeditiously, inexpensively, and without encumbrance of any character." (Cal. Const., art. XIV, § 4.) The same point was raised with respect to identical language formerly found in article XX, section 21 of the state Constitution in *Roe* (12 Cal.3d at p. 891) and in *Cole* (22 Cal.3d at p. 845). As our Supreme Court explained in *Roe*, "the board may decide a claim of [employer] negligence with no more and probably less difficulty than the issue of serious and willful misconduct." (*Id.*, at p. 892.) Surely since the Board may decide tangential factual matters involving comparative fault (*Cole*), it can decide factual matters involving apportionment of disability resulting from different accidents. Inquiries into apportioning disability are far more endemic to the Board than resolution of comparative fault issues. In short, we reject the notion that allowing the Board to decide this matter will defeat substantial justice or unduly encumber the workers' compensation system.

The relief sought herein is denied, and the orders are affirmed. In the absence of any agreement between the parties, the Board may proceed to take whatever evidence it deems necessary to determine what portion

---

[8]Employer maintains that the determination of damages in a civil action necessarily included a determination (apportionment) of what injury caused how much disability, and should be res judicata. Not so. Damages recoverable in an action at law constitute elements such as pain and suffering not relevant to a finding of disability. Permanent disability, for purposes of workers' compensation laws, refers to an irreversible industrial injury causing an impairment in earning power or capacity. (Cal. Workmen's Compensation Practice (Cont. Ed. Bar 1973) § 15.1, p. 533.) A jury's assessment of tort damages in a general verdict cannot logically be equated with adjudication of disability attributable to each accident.

of the employee's disability was caused by the industrial injury and what portion, if any, was caused by the third party's negligence. The Board may then award the employer a credit representing benefits for the latter under section 3861.